**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DR. THOMAS WINTER,

      Plaintiff,

          v.

THE PENNSYLVANIA STATE
UNIVERSITY, *et al.*,

      Defendants.

CIVIL ACTION NO. 3:15-CV-01166

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss Plaintiff Dr. Thomas Winter's Complaint filed by Defendants The Pennsylvania State University ("Penn State") and eleven (11) Penn State employees in their official and individual capacities (collectively "Defendants"). (Doc. 5.) Plaintiff's Complaint asserts claims for (1) a violation of his procedural due process rights under 42 U.S.C. § 1983 ("section 1983"); (2) a violation of his substantive due process rights under section 1983; (3) sex discrimination under 20 U.S.C. § 1681 ("Title IX"); and (4) breach of contract. (Doc. 1.) Because Plaintiff has failed to state a claim for a due process violation or for sex discrimination pursuant to Title IX, Defendants' motion to dismiss these claims will be granted. Because these claims will be dismissed, I will not exercise supplemental jurisdiction over Plaintiff's remaining breach of contract claim. Accordingly, Plaintiff's Complaint will be dismissed in its entirety.

## I. Background

The facts as set forth in Plaintiff's Complaint are as follows:

For thirty-eight (38) years, Plaintiff Dr. Thomas Winter was a tenured physics professor at Penn State's Wilkes-Barre campus. As a tenured professor, Plaintiff could only be terminated for "grave misconduct." On November 20, 2014, Plaintiff was terminated from employment by Penn State's president, Defendant Eric J. Barron, "for the adequate cause of grave misconduct effective immediately." (Doc. 1, ¶ 82.) The present dispute

centers around the issue of whether Plaintiff's termination violated Penn State's tenure policies as well as his rights under federal and state law.

Defendants include Penn State, which is a public state-related university, and eleven (11) Penn State employees in their official and individual capacities. These eleven (11) employees include the following individuals:

(1)    Eric J. Barron ("Barron"), President of Penn State;

(2)    Kenneth F. Lehrman ("Lehrman"), Vice Provost for Affirmative Action and Title IX Coordinator for Penn State;

(3)    Pamela Silver ("Silver"), Chairperson of the Standing Joint Committee on Tenure ("SJCT");

(4)    Cynthia A. Brewer ("Brewer"), Head of the Department of Geography, College of Earth and Mineral Sciences at Penn State's University Park Campus and Member of the SJCT;

(5)    Catherine Harmonosky ("Harmonosky"), Interim Associate Dean for Undergraduate and Graduate Education in the College of Engineering at Penn State's University Park Campus and Member of the SJCT;

(6)    Christian M. Brady ("Brady"), Dean of Schreyer Honors College of Penn State employee and Member of the SJCT;

(7)    Ann. M. Williams ("Williams"), Chancellor of Penn State Lehigh Valley at Penn State's Lehigh Campus and Member of the SJCT;

(8)    Madlyn Hanes ("Hanes"), Vice President for Commonwealth Campuses and Dean of the University College;

(9)    Daniel Larson ("Larson"), Dean of the Eberly College of Science;

(10)    Nicholas Jones ("Jones"), Executive Vice President and Provost; and

(11)    Kathie Flanagan-Herstek ("Flanagan-Herstek"), Director of Student and Enrollment Services at Penn State's Wilkes-Barre campus.

On March 20, 2014, at Defendant Lehrman's direction, Albert Lozano, the Director of Academic Affairs at Penn State's Wilkes-Barre campus, e-mailed Plaintiff advising him that he, Dr. Lozano, needed to meet with Plaintiff the next day regarding an academic matter. However, when Plaintiff arrived at Dr. Lozano's office, Dr. Lozano immediately left, leaving Plaintiff alone with Defendant Lehrman. Defendant Lehrman then proceeded to conduct an "ambush interview" of Plaintiff regarding a sexual harassment complaint that had been filed against Plaintiff by Defendant Flanagan-Herstek on behalf of J.T., a twenty-one-year-old undergraduate female student in one of Plaintiff's physics classes. Plaintiff received no advance notice that the meeting was going to be about a sexual harassment complaint. During this meeting, Plaintiff was not shown a copy of J.T.'s complaint. This meeting was Defendant Lehrman's sole interview with Plaintiff.

At some point after this interview and after conducting an investigation into the sexual harassment complaint, Defendant Lehrman drafted a report (the "Lehrman Report"), in which he recommended that the University institute the procedures outlined in University Policy HR70 for Plaintiff's dismissal.  At the time of Defendant Lehrman's investigation, there were Title IX complaints pending against Penn State and the U.S. Department of Education was investigating Penn State's handling of sexual misconduct complaints. Subsequently, on August 11, 2014, based on the Lehrman Report and their own judgment, Defendants Hanes, Larson, and Jones sent a letter to the SJCT stating their belief that termination of Plaintiff's employment for grave misconduct was warranted.  As a result of this letter and the Lehrman Report, termination proceedings were instituted.

On September 16 and October 1, 2014, a hearing was held before the SJCT. Plaintiff was represented by counsel at this hearing.  The SJCT consisted of Defendants Silver, Brewer, Harmonosky, Brady, and Williams, who, over counsel's objections, allowed hearsay and double-hearsay testimony to prejudice Plaintiff.  Defendants Hanes and Larson, both of whom are high officials at the University and outranked the SJCT members, were permitted to testify against Plaintiff even though they lacked personal knowledge with respect to anything that occurred.  Although both J.T. and Plaintiff testified that Plaintiff was not seeking a sexual relationship with J.T., Defendant Lehrman falsely accused Plaintiff of "grooming" J.T. for such a relationship.  Plaintiff alleges that Defendant Lehrman knew that to accuse Plaintiff of "grooming" J.T. would have a highly inflammatory effect and would prejudice the SJCT against Plaintiff given Penn State's recent and highly publicized sex abuse scandal regarding Jerry Sandusky, a former assistant football coach for Penn State.

On November 20, 2014, Defendant Barron terminated Plaintiff's employment with Penn State for "grave misconduct."  The termination was made upon the recommendation of the SJCT following a two-day hearing before the Committee.  The "grave misconduct" that Plaintiff engaged in concerned two (2) comments on J.T.'s appearance and one "hug" towards J.T.  After Plaintiff allegedly complimented J.T. on her appearance in February 2014 and after having had lunch off campus with J.T. to discuss her independent study (a

practice that Plaintiff did with other male and female students), J.T. grew concerned that her grades in Plaintiff's classes might suffer after she refused to go to lunch for a fifth time with Plaintiff after she had indicated to him that she was uncomfortable doing so because he had told her he liked her personally and had complimented her appearance.  Defendant Flanagan-Herstek told J.T. that she had been sexually harassed.

Plaintiff asserts that given the sharp public criticism of Penn State and its handling of sexual harassment complaints, Defendants Penn State, Lehrman, Barron, Hanes, Larson, Jones, and Flanagan-Herstek lacked the impartiality necessary to provide Plaintiff with a fair investigation and ultimately a fair hearing and decision with respect to his matter. Plaintiff asserts that they participated in and orchestrated the effort to oust him from his position.  Specifically, Plaintiff claims that Defendants were motivated by a desire to "improve their standing with the Department of Education" and to "avoid further public criticism." (Doc. 1, ¶ 36.)  Plaintiff further asserts that a review of the allegations set forth in the sexual harassment complaint filed shows that even if all the allegations set forth were true, it would not meet the definition of sexual harassment set forth in the Penn State Policy applicable to tenured faculty, which is the same as the legal definition of sexual harassment.

For example, despite J.T.'s alleged concerns about her grades, Plaintiff continued to assist J.T. to achieve her academic goal of enrolling the following semester as a chemistry major at University Park.  After Plaintiff and J.T. agreed that the grade she deserved to receive in the Independent Math 141 course was a B minus, Plaintiff, when he was informed by the Registrar that a B minus would be insufficient for J.T. to enroll as a chemistry major at University Park, raised J.T.'s grade to a B so that she could enroll.  This occurred after J.T. had told Plaintiff that she did not want to have lunch with him.  Plaintiff also gave J.T. the opportunity, as he had with other students, to raise her grade on a Physics 213 final exam by allowing her to expand her answer on one of the questions.  This also occurred after J.T. told Plaintiff that she did not want to have lunch with him.

## II. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681).  This Court has supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367.  Venue is appropriate in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(1) because the purportedly unlawful actions were committed within this judicial district.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *Id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id*.  While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  As such, "[t]he touchstone of the pleading standard is plausability."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256,

6

263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## IV. Discussion

On June 12, 2015, Plaintiff filed a four-count Complaint against Defendants. (Doc. 1.)  Counts I and II assert procedural and substantive due process violations of Plaintiff's Fourteenth Amendment rights pursuant to section 1983.  Count III asserts a sex discrimination claim pursuant to Title IX.  Count IV asserts a breach of contract claim.  On August 13, 2015, Defendants filed the instant motion to dismiss all claims in Plaintiff's Complaint.  (Doc. 5.)  Each of these claims will be discussed in turn below.

### A.   Section 1983 Claims

Plaintiff asserts section 1983 claims against Defendants for violations of his Fourteenth Amendment due process rights.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."  42 U.S.C. § 1983.  To establish liability under section 1983, "a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).  Here, Plaintiff asserts that Defendants violated his procedural and substantive due process rights under the Fourteenth Amendment, which prohibits a state from depriving any person of life, liberty, or property, without due process of law.  U.S. Const. Amend. XIV, § 1.

### 1.    Procedural Due Process

To state a claim for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property" and (2) the procedures available to him did not provide "due process of law."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  Plaintiff asserts two (2) procedural due process claims. First, he raises a "stigma-plus" claim, contending that he was deprived of his liberty interest in his reputation.  Second, he contends that he was deprived of his property interest in his tenured employment.

### a.    Liberty Interest

The Due Process Clause of the Fourteenth Amendment protects a liberty interest in reputation only when the plaintiff shows a "stigma" to reputation "***plus*** deprivation of some additional right or interest."  *Hill*, 455 F.3d at 236; *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008) (noting that a procedural due process claim for deprivation of a liberty interest in reputation requires showing "a stigma to his reputation plus deprivation of some additional right or interest") (citation and internal quotation marks omitted).  To satisfy the "stigma" prong, Plaintiff must allege that Defendants made a false, stigmatizing statement and that the stigmatizing statement was made publicly.  *See Hill*, 455 F.3d at 236 (citations omitted); *Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (explaining that to establish the "stigma" prong, the employee must show "1) publication of 2) a substantially and materially false statement that (3) infringed upon the reputation, honor, or integrity of the employee"). To satisfy the "plus" prong, the Third Circuit has held that alleging a property interest is sufficient.  *Dee*, 549 F.3d at 234; *see also Hill*, 455 F.3d at 236 (explaining that in the public employment context, "the creation and dissemination of a false and defamatory

8

impression is the 'stigma,' and the termination is the 'plus'").  Here, Plaintiff has alleged

a property interest in his continued employment, which is sufficient to satisfy the "plus"

prong.  *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985).[1]

However, Plaintiff has failed to allege a false, stigmatizing statement and that the

stigmatizing statement was made publicly.  Plaintiff asserts that a stigmatizing false

statement was made publicly through the Lehrman Report because Defendant Lehrman

falsely represented in his report that Plaintiff engaged in "grooming" J.T.  However, there

is no allegation that the Lehrman Report was released to the public.  Rather, Plaintiff

only alleges that the report was disseminated to Defendants Hanes, Larson, Jones, and

members of the SJCT, which was solely for the purpose of his termination proceedings.

This fails to allege a "publication."  For example, in *Knaub v. Tulli*, 788 F. Supp. 2d 349

(M.D. Pa. 2011), the court held that remarks to a school board intended to induce the

firing of a teacher (*i.e.*, for the purpose of termination proceedings) were ***not*** public and

therefore could not serve as the basis for a "stigma-plus" due process claim.  *Id.* at 355-

56.

Plaintiff also asserts that the November 20, 2014 termination letter sent to him

and the disconnection of Plaintiff from his Penn State e-mail account made a "public

---

[1]     A legitimate property interest in continued employment with the government
arises from the operation of state law, which can confer such an interest either by
statute or contract.  *Bishop v. Wood*, 426 U.S. 3451, 345-46 & n.8 (1976); *Unger
v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991).
Because public employees in Pennsylvania are presumed to be at-will employees,
a property interest in employment arises in the case of tenured employment or
when termination can only occur for cause.  *Unger*, 928 F.2d at 1399; *see also
Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997).  Additionally, the Supreme Court
has recognized that a public college professor dismissed from an office held under
tenure provisions as well as college professors dismissed during the terms of their
contracts have interests in continued employment safeguarded by due process
requirements.  *Slochower v. Bd. of Educ.*, 350 U.S. 551 (1956); *Wieman v.
Updegraff*, 344 U.S. 183 (1952).

statement" to Plaintiff's students and anyone attempting to contact him.  However, this also fails to adequately allege the publication of a stigmatizing and false statement because (1) there is no allegation that the termination letter was made public and (2) the disconnection of his e-mail account was not a "public statement."  Additionally, these allegations are not made in Plaintiff's Complaint but in his opposition to Defendants' motion to dismiss, and therefore I need not consider them.  *See Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (explaining that "the complaint may not be amended by the briefs in opposition to a motion to dismiss").  Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claim in Count I based on his liberty interest in his reputation will be granted.

### b.    Property Interest

Plaintiff also asserts a procedural due process claim based on a deprivation of his property interest in continued employment.  Although Defendants concede that Plaintiff has a property interest in continued employment for purposes of his procedural due process claim (Doc. 19, at 2 n.1), they seek dismissal on the ground that Plaintiff has failed to allege any procedural safeguards that he was constitutionally entitled to but denied (Doc. 19, at 3-4).

An essential principle of due process is that any deprivation of life, liberty, or property must be preceded by "notice and opportunity for hearing appropriate to the nature of the case."  *Loudermill*, 470 U.S. at 542 (citation and internal quotation marks omitted).  Due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  *Id.* (citation omitted).  The Supreme Court has noted that one essential component of due process is a pre-termination opportunity to respond.  *Id.*  Having said that, however, the Supreme Court further noted that the pre-termination "hearing," though necessary, "need

10

not be elaborate." *Id.* at 545.  Rather, the "formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (citation and internal quotation marks omitted).

The Supreme Court specifically noted that "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action.  *Id.*  After balancing the interests of public employees and employers, the Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546 (citation omitted).  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*  In *Chung v. Park*, 514 F.2d 382 (3d Cir. 1975), the Third Circuit Court of Appeals stated that pre-termination safeguards due to tenured professors may include: (1) written notice of the grounds for termination; (2) disclosure of the evidence supporting termination; (3) the right to confront and cross-examine adverse witnesses; (4) an opportunity to be heard in person and to present witnesses and documentary evidence; (5) a neutral and detached hearing body; and (6) a written statement by the fact finders as to the evidence relied upon. *Id.* at 386.

Plaintiff has failed to set forth any denial of safeguards to which he was constitutionally entitled.  First, Plaintiff alleges that Defendants failed to provide him with adequate advance notice of the sexual harassment charge.  Specifically, he highlights the "ambush" interview conducted by Defendant Lehrman and Defendants' failure to inform Plaintiff of the sexual harassment complaint prior to the interview.  However, the Third Circuit Court of Appeals has repeatedly held that "advance notice is not required." *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986).  For example, in *Copeland v.*

*Phila. Police Dep't*, 840 F.2d 1139 (3d Cir. 1988), the Third Circuit held that procedural due process was met where a policeman was told that he had tested positive for illegal drug use, was allowed to respond, and was told that he would be suspended with intent to dismiss, all in the course of a ***single interview.***[2]  *Id.* at 1142-46.  Similarly, in *McDaniels v. Flick*, 59 F.3d 446 (3d Cir. 1995), the Third Circuit rejected the argument of a tenured professor terminated due to a sexual harassment complaint that "the notice given him was insufficient because it was not provided until the beginning of the pretermination meeting," and reiterated that "advance notice is not required."  *Id.* at 457 (quoting *Gniotek*, 808 F.2d at 244).  Therefore, Plaintiff's allegations that he was not provided adequate notice in advance of his pre-termination hearing fail to establish a due process violation.

Plaintiff also alleges that he did not receive adequate advance notice or an explanation of the charges against him because he was not provided with a copy of the sexual harassment complaint at his meeting with Defendant Lehrman.  However, this, too, fails to allege a due process violation because "pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee 'the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges."  *Gniotek*, 808 F.2d at 244; *see also McDaniels*, 59 F.3d at 457 (rejecting tenured professor's argument that he did not receive adequate notice and explanation of the sexual harassment charges against him because he was not told or given the exact allegations made by the complainant);

---

[2]     To the extent that Plaintiff suggests that he is entitled to more process than the run-of-the-mill *Loudermill*-type employee given his status as a tenured professor, the Third Circuit Court of Appeals has already rejected such a proposition.  *See McDaniels v. Flick*, 59 F.3d 446, 455 (3d Cir. 1995) (rejecting tenured professor's suggestion that he is entitled to more process than the run-of-the-mill *Loudermill*-type employee).

*Derstein v. Kansas*, 915 F.2d 1410, 1413 (10th Cir. 1990) (fact that employee did not know of all relevant facts and was not given copy of investigation transcript is insignificant), *cert. denied*, 499 U.S. 937 (1991) (cited with approval by the Third Circuit in *McDaniels v. Flick*, 59 F.3d 446, 457 (3d Cir. 1995).)  Therefore, it is of no moment that Plaintiff was not provided with a copy of J.T.'s complaint at his initial meeting with Defendant Lehrman because Defendant Lehrman explained the charges against Plaintiff and Plaintiff was provided with the opportunity to ask questions regarding the allegations.  This was sufficient to put Plaintiff on notice of the charges against him so that he could meaningfully respond.  *McDaniels*, 59 F.3d at 457.  Additionally, Plaintiff was not terminated at the end of this initial meeting with Defendant Lehrman.  Rather, he was given plenty of "cooling off" time to collect himself and prepare a response to the allegations against him at the SJCT hearing, which gave him a sufficient, meaningful opportunity to respond.  For example, in *Derstein v. Kansas*, 915 F.2d 1410 (10th Cir. 1990), *abrogated on other grounds*, which was cited with approval by the Third Circuit Court of Appeals in *McDaniels v. Flick*, 59 F.3d 446, 457 (3d Cir. 1995), a public employer received information that a tenured employee was sexually harassing other employees.  As a result, he was directed to appear at a meeting with persons responsible for his employment.  Like here, he was not informed of the purpose of this meeting before it started, but at the meeting, he was advised of the sexual harassment charges.  He was then given ten (10) days to resign or be terminated, and was also told he could appeal.  Following a bench trial, the district court found that the employee's pretermination rights had been violated and entered judgment for him.  However, the Tenth Circuit Court of Appeals reversed, emphasizing that the employee "was not terminated at the meeting but given ten days to respond" and "[h]e was given ten days before termination."  *Id.* at 1413.  Relying on this case, the Third Circuit Court of Appeals

13

in *McDaniels v. Flick* similarly reversed a district court order and held that a tenured professor's substantive due process rights were ***not*** violated because he was given even more than ten (10) days to respond to the sexual harassment charges against him and he did, indeed, respond, at a later date.  59 F.3d at 457-58.

Second, Plaintiff claims that he could not and did not receive a fair hearing before the SJCT because, *inter alia*, (1) irrelevant and prejudicial testimony was introduced at the hearing, such as the concept of "grooming," (2) Defendant Flanagan-Herstek, who filed the sexual harassment complaint on behalf of the student, applied an incorrect standard of sexual harassment, (3) hearsay and double hearsay evidence was admitted over the objection of Plaintiff's counsel, which prejudiced the lay faculty members hearing the matter, (4) the hearing included testimony from faculty without personal knowledge of the actual harassment, and (5) the SJCT faculty were biased and impartial from the outset given the inflammatory Lehrman Report and the ongoing government investigation and scrutiny by the media regarding Penn State's recent handling of sexual misconduct allegations.  These allegations fail to establish a due process violation. First, there are no factual allegations raising a plausible inference that because the word "grooming" was introduced at the hearing, the Committee was automatically biased against Plaintiff or unable to assess its relevance or lack thereof, given testimony from Plaintiff and J.T. that their relationship was not sexual in nature.  There are also no factual allegations raising a plausible inference that the SJCT applied the wrong standard of sexual harassment.  Second, Plaintiff fails to identify what the hearsay or double hearsay testimony was that he claims prejudiced him, but only offers conclusory statements that such statements were admitted.  This not only fails to show that he was prejudiced, but fails to allege a due process violation, particularly because the Due Process Clause does not require strict adherence to the rules applicable at trials.  *See*

*Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221 (3d Cir. 2009)

(quoting *Loudermill* that "something less than a full evidentiary hearing is sufficient prior

to adverse administrative action" so long as the employee may present "his side of the

story").  Although Plaintiff cites to *K.D. v. Mid-West Sch. Dist.*, No. 1252-C.D.-2008,

2009 WL 9097069 (Pa. Cmmw. Ct. Jan .30, 2009) in support of his argument that this

hearsay testimony violated his due process, his reliance on this decision is misguided.

In *K.D.*, a high school student was expelled from school following a hearing held

before the school board.  The school board's decision to expel K.D. resulted from its

determination that he had used marijuana at a school-sponsored event.  The only

evidence supporting this determination was the hearsay testimony of the District

Superintendent.  Unlike at Plaintiff's SJCT hearing, no one with personal knowledge of

the events at issue testified at K.D.'s hearing.  K.D. appealed the school board's

decision to the Court of Common Pleas, which reversed.  The Commonwealth Court

then affirmed the trial court decision reversing the suspension.  The *K.D.* decision is

distinguishable on two (2) important facts.  First, the school board decision in *K.D.* relied

***solely and exclusively*** on hearsay, whereas here, Plaintiff does not, and cannot, deny

that the SJCT and Defendant Barron considered first-hand testimony and based their

decision on more than just hearsay.  In fact, Plaintiff makes no allegations that the SJCT

or Defendant Barron even relied on the hearsay testimony in making their decision.

Second, the school board hearing in *K.D.* was presumably governed by 22 Pa. Code §

12.8, which requires specifically enumerated hearing requirements.  There is no support

in the law for the proposition that an internal university hearing on the termination of a

tenured faculty member must follow rules of evidence to comply with procedural due

process.  In fact, as noted earlier, the opposite is true.  *See Loudermill*, 470 U.S. at 545

(noting that a pre-termination hearing "need not be elaborate" and can be "something

15

less than a full evidentiary hearing"). Accordingly, the SJCT's admission of unidentified hearsay evidence into the record fails to establish a due process violation.

Further, regarding testimony from faculty without personal knowledge of the harassment, the Complaint fails to specify the content of this testimony or explain how the testimony would so bias the SJCT as to render their decision a violation of the Constitution. Also missing are any factual allegations suggesting that either the SJCT or Defendant Barron relied on this testimony in making a decision. Rather, the Complaint itself concedes that J.T. herself testified at the hearing and that Plaintiff, who was represented by counsel, was able to cross-examine her and also present his side of the story through his own evidence. There are no allegations that Plaintiff was denied counsel at this hearing or that he was precluded from cross-examining the victim on her first-hand testimony. Plaintiff also asserts that the SJCT and Defendant members of Penn State's administration lacked the impartiality necessary to provide Plaintiff with a fair review of his case based on the ongoing government investigation and scrutiny by the media regarding Penn State's handling of sexual harassment complaints, including the Sandusky affair. However, Plaintiff cannot claim that the SJCT faculty were so biased against him so as to establish a due process violation simply because Penn State was being investigated for its handling of sexual harassment complaints, particularly since Plaintiff offers no factual allegations regarding the SJCT faculty or other Defendants suggesting that they were biased. Plaintiff essentially claims that a school's administration officials are incapable of fairly reviewing any sexual harassment complaint if they are being investigated for the handling of other sexual harassment complaints. This fails to establish a due process violation.

Plaintiff also alleges that the investigator, Defendant Lehrman, had a conflict of interest because he was both the Vice Provost of Affirmative Action and Title IX

16

Coordinator.  However, Plaintiff fails to explain how these two (2) positions created a conflict that prevented Defendant Lehrman from serving as a neutral investigator or how the dual roles prejudiced Plaintiff.  In particular, Plaintiff makes no factual allegations regarding Defendant Lehrman's investigation or how it was unfair.  In any event, the two (2) day SJCT hearing and the final review by Defendant Barron, the individual responsible for making the final termination decision, effectively cures any alleged bias or defects arising earlier in the process, such as during Defendant Lehrman's investigation of the harassment or his purported conflict of interest.  *See McDaniels*, 59 F.3d 446, 459-60 (holding that an initial determination by a biased decision-maker does not necessarily deprive an employee of his due process rights because an employer may effectively cure any bias with subsequent "meaningful means" to assess the determination).  Plaintiff also accuses Defendant Lehrman of "spinning" his interview with Plaintiff in the Lehrman Report and in his testimony before the SJCT, but fails to make any factual allegations as to how the interview was "spun" in his Report or in his testimony.  He also makes no allegation demonstrating that this was relied upon by the SJCT or Defendant Barron in the final termination decision.  Although Plaintiff does note that the Lehrman Report falsely alleged that Plaintiff favored female over male students, even though Plaintiff alleges that there was no evidentiary support at the hearing for this, there is no reason to believe that the SJCT was incapable of assessing what there was evidentiary support for and what there was not.  Additionally, Plaintiff does not allege that he was unable to cross-examine Defendant Lehrman and point out any inaccuracies in the Lehrman Report.  This Court should not serve as a means for Plaintiff to get a "second bite at the apple" and re-try his case.  *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 143 (3d Cir. 2000) (reaffirming "the Supreme Court's admonition that the federal judiciary should not become a general court of review for state

17

employment decisions") (citing *Bishop v. Wood*, 426 U.S. 341, 359-60 (1976)).  As Defendants point out, there is nothing in the Due Process Clause that entitles Plaintiff to *de novo* judicial review of Penn State's decision to terminate his employment.  Rather, the Due Process Clause only provides him with procedural safeguards, none of which he can allege were violated here.

Finally, Plaintiff alleges that the SJCT Report, which recommended Plaintiff's termination and was sent to Defendant President Barron, who made the ultimate termination decision, suggested that Plaintiff violated University Policy AD47 - General Standards of Professional Ethics, even though there was never an allegation made before or at the SJCT hearing that Plaintiff violated this policy.  Therefore, Plaintiff argues that he had no notice of such a charge or an opportunity to respond thereto.  However, there are no allegations in the Complaint that Plaintiff was actually terminated for violating AD-47.  Additionally, it is clear from the Complaint that Plaintiff was aware of the misconduct on which Penn State based its termination decision.  (Doc. 1, ¶¶ 54-58, 82.)  Plaintiff does not dispute that he was terminated for grave misconduct as defined by University Policy HR-70.  (*Id.* ¶ 54.)  The fact that Plaintiff's conduct may have violated more than one (1) University standard set forth in the policy does not undermine the process afforded him to respond to the charge of grave misconduct, especially since Plaintiff knew the **conduct** for which he was being investigated and ultimately terminated for.

**B.    Substantive Due Process**

Plaintiff also asserts that Defendants deprived him of two (2) fundamental interests entitled to substantive due process protection:  (1) his property interest in tenured, continued employment and (2) his liberty interest in his reputation.  First, Defendants seek dismissal on the ground that the Third Circuit has held that tenured employment is **not** entitled to substantive due process protection.  *See Nicholas v.*

*Pennsylvania State Univ., et. al.*, 227 F.3d 133, 138-39 (3d Cir. 2000) (holding that a property interest in tenured professorship is not entitled to substantive due process protection). Second, Defendants argue that to the extent Plaintiff's substantive due process claim rests on reputational injury that decreased his ability to earn a living, that also fails. *See Musila v. Lock Haven Univ.*, 970 F. Supp. 2d 384, 391 (M.D. Pa. 2013) (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399-404 (3d Cir. 2000) (defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim)). Third, Defendants argue that Plaintiff's reputational injury claim must fail because Defendants never publicized Plaintiff's termination or the grounds for that termination, namely, there are no allegations explaining how the Lehrman Report or Defendant Barron's termination letter constitute a **public** statement. *See Hill*, 455 F.3d at 236 (holding that "stigma plus" due process claims require that the stigmatizing statements were made publicly).

Plaintiff argues that to establish a claim for a substantive due process violation, a plaintiff must show that Defendants' conduct was so arbitrary and capricious as to "shock the conscience." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Plaintiff argues that his termination shocks the conscience for several reasons: (1) he was terminated in blatant disregard of his due process right to a fair and impartial hearing, (2) he was terminated without a reasonable basis and absent the "clear and convincing evidence" of "grave misconduct" required to terminate a tenured faculty member under Penn State's policies, and (3) Defendants knowingly and purposefully terminated Plaintiff without just cause to improve Penn State's reputation in light of the ongoing government investigation of the Sandusky scandal and Penn State's general failure to properly handle sexual misconduct complaints.

To prevail on a substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies. *Nicholas*, 227 F.3d at 139-40 (citation and internal quotation marks omitted). It is well-settled that although state-created

property interests are entitled to protection under the ***procedural*** component of the Due Process Clause, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id.* at 140 (citation and internal quotation marks omitted). Rather, to state a substantive due process claim, "a plaintiff must have been deprived of a ***particular quality*** of property interest." *Id.* (citation and internal quotation marks omitted). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* (citation omitted). The Third Circuit has summarized this analysis by explaining that "when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.* at 142. In addressing a case very similar to the one here, the Third Circuit explicitly held that tenured public employment is not a fundamental property interest entitled to substantive due process protection. *Id.* at 142. The holding in *Nicholas* bars Plaintiff's substantive due process claim regarding his tenured public employment. Accordingly, Defendants' motion to dismiss this claim will be granted.

Plaintiff also raises a Fourteenth Amendment liberty interest in his reputation as part of his substantive due process claim. However, "[t]o the extent plaintiff's substantive due process claim rests on reputational injury that decreased his ability to earn a living, it also fails." *Musila v. Lock Haven Univ.*, 970 F. Supp. 2d 384, 391 (M.D. Pa. 2013) (citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399-404 (3d Cir. 2000)). Additionally, as explained earlier, Plaintiff fails to adequately allege that Defendants publicized his termination or the grounds for that termination. Accordingly,

20

Defendants' motion to dismiss Plaintiff's substantive due process claims in Count II of the Complaint will be granted.

## C.     Plaintiff's "Official Capacity" Claims

Defendants also argue that Plaintiff's official capacity due process claims in Counts I and II against the Individual Defendants are redundant and should be dismissed.  However, I need not address this argument given my finding above that Plaintiff has failed to allege any procedural or substantive due process violations.  Accordingly, Defendants' motion to dismiss these claims will be granted.

## D.     Title IX Claim

Defendants seek dismissal of Plaintiff's Title IX claim on the grounds that (1) Title VII preempts Plaintiff's Title IX claim; and (2) there are insufficient factual allegations to establish that Plaintiff was discriminated against because of his sex.  Plaintiff rebuts that (1) federal courts in the Third Circuit have recognized that Title VII does not preempt Title IX in the employment context and (2) that he has properly pled a Title IX violation.

### 1.     Preemption

The issue of whether Title VII preempts a Title IX claim to recover damages for employment discrimination is unsettled, as noted by several other courts that have confronted this issue.[3]  *Compare Preston v. Commonwealth of Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205-06 (4th Cir. 1994) ("An implied private right of action

---

[3]     Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 (1998 & Supp. V 1993).

Title IX was passed to address the growing problem of sex discrimination in educational programs.  *See* 118 Cong. Rec. 5804-15 (1972); H.R. Rep. No. 554, 92d Cong., 1st Sess. 1-3 (1972).  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C. § 1681(a) (1994).

exists for enforcement of Title IX. . . . [which] extends to employment discrimination on the basis of gender by educational institutions receiving federal funds.") (citation omitted), *with Lakoski v. James*, 66 F.3d 751, 755 (5th Cir. 1995) ("We are persuaded that Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination.").  *See also A.B. ex rel. C.D. v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 151 (S.D.N.Y. 2004) (discussing the circuit split).  Central to this split is a disagreement over the scope of Title IX that has been established by three (3) Supreme Court cases:  (1) *Cannon v. University of Chicago*, 441 U.S. 677 (1979) ("*Cannon*"); (2) *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982) ("*Bell*"); and (3) *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) ("*Franklin*").

 After reviewing these Supreme Court rulings and subsequent cases interpreting them, I conclude that Title VII does not preempt Plaintiff's Title IX employment discrimination claim.  In *Cannon*, the Supreme Court held that there was an implied private cause of action for victims of sex discrimination by universities receiving federal funding.  *Cannon*, 441 U.S. at 703-10.  In *Bell*, the Court then clarified that Title IX's prohibition of sex discrimination applied not only to students, but also to "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans or contracts," thereby broadening the scope of Title IX to include employment discrimination.  *Bell*, 456 U.S. at 520; *id.* at 530 (undergoing a comprehensive analysis of the statutory language and legislative history of Title IX and explicitly concluding that "employment discrimination comes within the prohibition of Title IX"); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (holding that Title IX's private right of action encompasses claims of retaliation against an employee because he has complained about sex discrimination).  Finally, in *Franklin*, the Court held that money damages were available for a student-plaintiff filing an action for sexual harassment under Title IX.  *Franklin*, 503 U.S. at 72-76 (resolving a circuit split and "conclud[ing] that a damages remedy is available for an action brought to enforce Title IX").

22

Applying these principles to the case at hand, I conclude that plaintiffs may pursue a private right of action seeking damages for employment discrimination claims against schools receiving federal funding and that Title VII would not preempt such a claim.  Reading the Supreme Court's rulings in *Cannon*, *North Haven*, and *Franklin* together, I agree with other courts that have interpreted these opinions to imply a private right of action for employees of educational institutions that receive federal funds.  *See, e.g.*, *Ivan v. Kent State Univ.*, No. 94-4090, 1996 WL 422496, at *3 n.10 (6th Cir. 1996) (overruling the district court's conclusion "that Title VII preempts an individual's private remedy under Title IX"); *Preston v. Commonwealth of Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205-06 (4th Cir. 1994) ("An implied private right of action exists for enforcement of Title IX. . . . [which] extends to employment discrimination on the basis of gender by educational institutions receiving federal funds.") (citation omitted)*; Gupta v. Albright Coll.*, No. Civ-A-05-1921, 2006 WL 162977, at *3 (E.D. Pa. Jan. 19, 2006)[4]; *A.B. ex rel. C.D. v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) ("Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally funded education programs; notwithstanding the possibility of other available remedies, including without limitation

---

[4]     Defendants criticize Plaintiff's reliance on *Gupta* because the plaintiff in *Gupta* was proceeding simultaneously under both Title VII and Title IX, and therefore "did not raise any concern that the plaintiff was avoiding the comprehensive framework and administrative requirements of Title VII."  This is insufficient to distinguish *Gupta* because there is no legal basis for permitting a Title IX claim only when it is brought in conjunction with a Title VII claim, but prohibiting that same claim when brought alone.  Additionally, Defendants note that the court in *Gupta* recognized that the plaintiff's Title IX claim might be preempted by Title VII, but that this issue had simply not yet been resolved by the appellate courts.  Although Defendants argue that this weighs in favor of finding preemption, I disagree.  Just as the court in *Gupta* recognized that plaintiff-employees "retain[] a private right of action under Title IX that ***at this time has not been held to be preempted by Title VII***," and therefore permitted the plaintiff's Title IX claim, here, I, too, recognize that Title IX has ***not yet been held*** to be preempted by Title VII, and therefore will permit Plaintiff's claim.  *Id.* at *3.

those available under Title VII."); *Hensche v. N.Y. Hospital-Cornell Medical Center*, 821 F. Supp. 166, 171-73 (S.D.N.Y. 1993) (rejecting the defendants' argument that Title VII preempted Title IX and explaining that *Cannon*, *North Haven*, and *Franklin* read together stood for the proposition that Title IX was intended to "serve as an additional protection against gender-based discrimination in educational programs receiving federal funding regardless of the availability of a remedy under Title VII"); *Bowers v. Baylor Univ.*, 862 F. Supp. 142, 144-45 (W.D. Tex. 1994) (holding that a private cause of action for damages exists under Title IX for gender-based employment discrimination).  I am persuaded that if Congress intended for Title VII to preempt employment discrimination claims under Title IX, it could have drafted Title IX, which was enacted *after* Title VII, to state as much.  Instead, Title IX was drafted to cover "any *person*," not just any student, and therefore does, indeed, cover employees alleging claims of employment discrimination. Although Defendants suggest that the comprehensive administrative scheme underlying Title VII suggests that it is the exclusive remedy for employment discrimination and that Congress did not intend for plaintiffs to circumvent this scheme by filing claims pursuant to Title IX, the Supreme Court, in looking to the legislative history of Title VII, has stated otherwise.  *See Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975) ("Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.  The legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.") (citation, internal quotation marks, and alteration omitted).  In particular, Congress noted that "the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive."  *Id.* (citing H.R. Rep. No. 92-238, p. 19 (1971), U.S. Code Cong. & Admin. News, 1972, pp. 2137, 2154).  Therefore, guided by the principles articulated

24

by the Supreme Court in interpreting Title VII and Title IX claims, I conclude that Title VII is not the exclusive remedy for gender-based employment discrimination claims and that "Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally funded education programs; notwithstanding the possibility of other available remedies, including without limitation those available under Title VII." *A.B.*, 224 F.R.D. at 153. Accordingly, Title VII does not preempt Plaintiff's claim pursuant to Title IX and Defendants' motion to dismiss Plaintiff's claim on this ground will be denied.

### 2.   Prima Facie Case

Although Title VII does not preempt Plaintiff's Title IX claim, his claim will still be dismissed for failure to state a claim. To establish a prima facie case of employment discrimination under Title IX, Plaintiff must allege that (1) he is a member of a protected class (2) who suffered adverse employment action (3) that occurred under the circumstances giving rise to an inference of intentional discrimination. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580-81 (3d Cir. 1996). "'A plaintiff alleging racial or gender discrimination by a university [under Title IX] must do more than recite conclusory assertions.'" *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *4 (E.D. Pa. May 23, 2014) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

In cases involving sex discrimination in university discipline, including termination proceedings, there are two (2) categories of claims:  (1) claims of an erroneous outcome from a flawed proceeding and (2) claims of selective enforcement. *Yusuf*, 35 F.3d at 715. Here, Plaintiff's case falls within the first category: a claim of an erroneous outcome from a flawed termination proceeding. When a plaintiff claims a flawed outcome, like Plaintiff, he must allege, among other things, "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* Here, Plaintiff has failed to allege facts sufficient to meet either standard. The allegations in Plaintiff's Complaint purporting to identify Penn State's gender bias against

Plaintiff do not suggest gender bias as a motivating factor.  *See Harris*, 2014 WL 1910242, at *4 (dismissing a similar case with similar facts for this reason).  There are no facts alleged in the Complaint to support a plausible inference that any of the Defendants' recommendations or Defendant Barron's decision to ultimately terminate Plaintiff was based on his gender.  As conceded by the Complaint, a full-fledged hearing was held where multiple witnesses testified, suggesting that Defendants were attempting to objectively analyze and fairly resolve the sexual harassment complaint against Plaintiff, rather than simply terminating him because of his sex.  Accordingly, Plaintiff's Title IX claim will be dismissed.

### 3.   Individual Defendants

Defendants also seek dismissal of Plaintiff's Title IX claim against the Individual Defendants in Count III of the Complaint on the ground that Title IX does not afford a cause of action against individual defendants.  Because Plaintiff failed to respond to this argument, Defendants argue that Plaintiff has waived any defense they may have.  *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.").  However, I need not address this argument given the above analysis demonstrating that Plaintiff has failed to state a Title IX claim.  Additionally, I agree with the few courts that have confronted the issue of whether Title IX authorizes a cause of action against individuals, and find that it does not.  *See Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1577 (N.D. Cal. 1993) ("hold[ing] that individuals may not be held personally liable under Title IX" and dismissing such claims with prejudice); *Bowers v. Baylor Univ.*, 862 F. Supp. 142, 145-46 (W.D. Tex. 1994) (same); *Kobrick v. Stevens*, No. Civ-A-3:13-2865, 2014 WL 4914186, at *11 (M.D. Pa. Sept. 30, 2014) (holding that Title IX does not impose individual liability); *Nelson v. Temple Univ.*, 920 F. Supp. 633, 635 (E.D. Pa. 1996) (concluding that "[a] majority of the few cases explicitly addressing the issue have concluded that Title IX does not authorize a cause of action against individuals").  Accordingly, Plaintiff's Title IX claim against the Individual Defendants will be dismissed.

**E.      Breach of Contract Claim**

Because all of Plaintiff's federal claims against Defendants will be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's state-law breach of contract claim.  Accordingly, this claim will also be dismissed.

## V. Conclusion

For the above stated reasons, Defendants' motion to dismiss all claims in Plaintiff's Complaint will be granted.  All of Plaintiff's claims will be dismissed with prejudice.

An appropriate order follows.


March 22, 2016                                                    /s/ A. Richard Caputo
Date                                                                    A. Richard Caputo
                                                                          United States District Judge